UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| EDDIE HEAD, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 4:11CV741 CDP |
|  | ) |  |
| MICHAEL BOWERSOX, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

## MEMORANDUM AND ORDER

Petitioner Eddie Head is currently incarcerated in the South Central Correctional Center in Licking, Missouri. Head was convicted by a jury in the Circuit Court of the City of St. Louis, Missouri, of forcible rape, kidnapping, and two counts of first degree robbery.

This matter is before the Court on Head's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Head raises three grounds for relief. All of his claims are without merit, and I will therefore deny his petition for the writ.

## I.    Factual Background

One of the charges of first degree robbery stems from an incident on January 7, 2006. Around 11:00 p.m., James Harris was driving to a club when he noticed a truck behind him flashing its lights from high to low beams. Because he believed it may have been an undercover police officer, Harris pulled over and rolled down his window. The truck pulled up and angled itself in front of Harris's car so that

he was blocked from leaving. The three occupants of the car, including Head, began to curse at Harris for driving too slowly. Head's two accomplices then got into Harris's car and told him that they would shoot him if he didn't start the car. Harris fled from the vehicle, and Head's accomplices drove away in it. Head then left the scene in the truck and followed his accomplices. Harris identified Head in a photo lineup and while testifying at trial.

The remaining charges arise from events that occurred three days later, on January 10, 2006. J.W. was at a convenience store that evening to pick up cigarettes. While in the store, she was approached by Head and another individual, later identified as David Blakemore. J.W. testified that she had seen them at a different gas station earlier in the evening, and she refused their attention on both occasions. After she made her purchase, she began walking toward her nearby apartment building. Head and Blakemore grabbed her from behind and poked her with something in the back, claiming it was a gun. They told her not to scream or run or else they would shoot her, and they dragged her into an alley. Head told Blakemore to remove J.W.'s clothes, but he did it himself after Blakemore had trouble removing them. Once he removed her pants and underwear, he began to rape her while Blakemore kept a lookout. He became distracted when a truck drove by so he kneeled up, at which point J.W. was able to escape and run back to the gas station.

When police investigated, they obtained video surveillance of certain areas of the crime scene from motion-activated video cameras in the alley. From these photos, J.W. was able to identify Head as her attacker. She was also missing her cell phone and keys after the attack, and police found her keys in David Blakemore's apartment. After Head was arrested, he made a statement to the police that implicated him in the charged crimes. He also testified in his defense at trial and made several incriminatory statements regarding both incidents.

## II. Procedural Background

Head was charged by information with two counts of first degree robbery, one count of attempted first degree robbery, forcible rape, kidnapping, and third degree assault. The charge of attempted first degree robbery involved an incident with a victim named Adam Long, but it was nolle prosequied before evidence was heard because the victim did not appear in court. The charge of third degree assault was nolle prosequied before the case was submitted to the jury. Head was convicted of all four remaining charges.

The trial court sentenced Head to ten years imprisonment on each first degree robbery count, fifteen years imprisonment for forcible rape, and twelve years imprisonment for kidnapping. The sentences for one count of robbery and the kidnapping were to run concurrently with each other, and the other two counts were to run consecutively, for a total of thirty-seven years imprisonment.

Head appealed his conviction to the Missouri Court of Appeals, arguing that the trial court erred in: (1) denying his motion to dismiss improperly joined offenses or, alternatively, to sever the offenses; and (2) informing the jury of the charges involving Adam Long, for which he was not being tried.  The Missouri Court of Appeals affirmed the conviction in a per curiam unpublished opinion on October 14, 2008.

On January 12, 2009, Head filed a motion in the trial court for post-conviction relief under Missouri Rule 29.15.  He asserted two claims of ineffective assistance of counsel for failure to call a DNA expert to testify about evidence found at the scene of the crime, and for failure to correct the sentencing court's misapprehension about whether he was convicted of a class A or class B felony on the kidnapping charge.  The motion court held an evidentiary hearing and found no probable cause for the ineffective assistance of counsel claims.

Head appealed the denial of his motion to the Missouri Court of Appeals on June 4, 2010, asserting the same claims of ineffective assistance of counsel.  The appellate court affirmed the motion court's ruling that counsel was not ineffective for failure to call the DNA expert.  However, it reversed the judgment regarding the sentence on the kidnapping count and remanded for resentencing only on that count, as a class B felony, since it was not clear whether the sentencing judge used

the correct guidelines. Subsequently, Head's sentence on the kidnapping charge was reduced to seven years, for a total sentence of thirty-five years.

## III. Grounds Raised

Head now seeks federal habeas corpus relief, asserting the following grounds:

(1) Head was denied effective assistance of counsel because counsel failed to present testimony from a laboratory technician regarding DNA evidence found at the crime scene and on the victim;

(2) The trial court erred in failing to dismiss improperly joined counts or, alternatively, to sever the offenses;

(3) The trial court erred by informing the jury of other bad acts for which he was not being tried, namely, the alleged robbery of Adam Long.

## IV. Discussion

Under section (d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus shall not be granted unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

In *Shafer v. Bowersox*, the Eighth Circuit articulated the standards for subsection (1) as follows:

> The "contrary to" clause is satisfied if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrives at the opposite result. A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." A case cannot be overturned merely because it incorrectly applies federal law, for the application must also be "unreasonable."

329 F.3d 637, 646-47 (8th Cir. 2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405, 411, 413 (2000)).

Under subsection (2), "a state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings,' only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (quoting 28 U.S.C. § 2254(d)(2)) (citing 28 U.S.C. § 2254(e)(1); *Boyd v. Minnesota*, 274 F.3d 497, 501 n.4 (8th Cir. 2001)).

1. *Ineffective Assistance of Counsel*

The Supreme Court set out the standard for ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984). According to *Strickland*, a petitioner alleging ineffective assistance of counsel must make two showings. *Id.* at 687. First, the petitioner must "show that counsel's performance was deficient" in that it "fell below an objective standard of reasonableness." *Id.* at 687-88. In this regard, petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The Court in *Strickland* cautioned that "judicial scrutiny of counsel's performance must be highly deferential." *Id.* Strategic choices made after thorough investigation are "virtually unchallengeable," and decisions following less thorough investigation are to be upheld to the extent they are supported by reasonable judgment. *Id.* at 690-691.

In addition to showing counsel's assistance was deficient, a petitioner must also demonstrate that he or she was actually prejudiced. Id. at 687. According to *Strickland*, "[t]his requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." *Id.* In order to satisfy the "actual prejudice" standard, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In Ground 1, Head claims that he received ineffective assistance of counsel because his counsel failed to call a laboratory technician to testify about DNA evidence found at the scene. He raised the same claim in his post-conviction motion and on appeal after its denial. Although his claim of ineffectiveness is very broad, Head seems to claim that his attorney should have presented evidence that DNA from another "unknown" male was found in samples taken from the victim, and that Head's DNA was not found in any swabs taken from the victim.

Applying the *Strickland* standard in this case, the Missouri Court of Appeals concluded that Head's trial counsel was not ineffective for failing to call the laboratory technician to testify. Rather, the appellate court determined that counsel's decision fell within the realm of "reasonable trial strategy." Specifically, the appellate court stated:

> At the motion hearing, a DNA analyst testified that an unknown man's DNA was present on the victim's vaginal area and underwear. Movant's counsel testified that the victim's deposition indicated that she had had consensual intercourse with her boyfriend earlier on the evening of the rape and that Movant did not ejaculate. As such, he calculated that his case would be stronger without physical evidence. Specifically, counsel explained: "If I presented the DNA person, the State would have an explanation for who that person was or where that DNA came from. . . . If I said there was no DNA present whatsoever, [the State may be able to argue that] there's a possibility that [Movant's] DNA was there, but there was too little to be present so we couldn't test it. . . . If she did not testify, I could still argue in closing there was no physical evidence to show that he raped her."

*Head v. State*, 322 S.W.3d 151, 152-53 (Mo. Ct. App. 2010). The appellate court concluded that the "record supports the motion court's finding that counsel's decision was reasonable trial strategy." *Id.* at 153.

The decision of the Missouri appellate court with regard to this claim is not contrary to or an unreasonable application of federal law. "The decision not to call a witness is a 'virtually unchallengeable' decision of trial strategy . . . ." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (citations omitted); *see also Bowman v. Gammon*, 85 F.3d 1339, 1345 (8th Cir. 1996) (noting that under *Strickland*, "decisions related to trial strategy are virtually unchallengeable"). Counsel's strategy at trial was not contrary to what other reasonable attorneys would have decided to pursue. Though there were alternative strategies available to Head and his counsel at the time of trial, his counsel's choice of strategy must be given great deference, even if Head now believes that a different strategy may have been more beneficial.

It is true that the laboratory technician would have testified that Head's DNA was not found on the victim. However, in cross-examination by the government, the technician would have explained that the lack of DNA evidence would be consistent with the victim's testimony that Head did not ejaculate during the rape. Additionally, J.W. could have been called in rebuttal to clarify this point further. Head has not produced any evidence to show that the outcome of his trial

would have been any different had the laboratory technician been called to testify, given the rational explanations for the DNA evidence and the overwhelming amount of corroborating evidence already presented to the jury. Because Head has failed to demonstrate that trial counsel's performance was deficient and that he was prejudiced as a result of such performance, Ground 1 is without merit.

2. *Motion to Dismiss or Sever Offenses*

"Two offenses may be charged and tried together if they are of the 'same or similar character,' and '[w]here the offenses are similar in character and occurred over a relatively short period of time and the evidence overlaps, joinder is ordinarily appropriate.'" *United States v. Tyndall*, 263 F.3d 848, 849 (8th Cir. 2001) (quoting Fed. R. Crim. P. 8(a); *United States v. McClintic*, 570 F.2d 685, 689 (8th Cir. 1978)). Severance is appropriate "on the basis of possible prejudice arising from jury confusion or any undue influence created by two sets of charges." *Closs v. Leapley*, 18 F.3d 574, 578 (8th Cir. 1994). A claim of prejudice based on "the possibility that a defendant's choices for acquittal may be better in separate trials is an insufficient justification for severance." *United States v. Ruiz*, 412 F.3d 871, 887 (8th Cir. 2005). Likewise, a bald assertion that defendant may want to testify on one count but not another is insufficient; rather, he or she "must make a 'persuasive and detailed showing regarding the testimony he would give on one count he wishes severed and the reason he cannot testify on the other counts.'"

- 10 -

*United States v. Smith*, 919 F.2d 67, 68 (8th Cir. 1990) (quoting *United States v. Possick*, 849 F.2d 332, 338 (8th Cir. 1988)).

In Ground 2, Head argues that the trial court erred in denying his motion to dismiss or, alternatively, to sever the offenses involved in his case. On direct appeal, Head made the same argument. His motion claimed that Counts I and II (the January 7 offenses) were improperly joined with Counts III, IV, V, and VI (the January 10 offenses) because they are "not of a similar character, are not part of the same transaction, are not connected, and do not constitute a common scheme or plan." Resp. Ex. B, at 65-66.

The Missouri Court of Appeals reviewed this claim on direct appeal for plain error because Head did not properly preserve the claim for appeal by failing to request a hearing or ruling on the motion. The appellate court held that the charges were properly joined in a single indictment because they were of the same or similar character. The court considered the following factors: "Count I occurred less than three days before Counts III, IV, and V; Defendant had the same accomplice in all the charges; Defendant was in the same vehicle when all the crimes occurred; and all the crimes were committed in the same area." Resp. Ex. E, at 5-6.

After finding that joinder was proper, the appellate court then determined that severance was not warranted because defendant failed to make a particularized showing of prejudice. It explained:

> [T]he record shows that the jury was instructed that Defendant was charged with separate offenses on each count and the elements of each offense were clearly set out in separate instructions. A jury would have had little difficulty distinguishing the evidence and applying the law intelligently to each offense. Finally, the trial court made no ruling in which it found the existence of a bias or discrimination against Defendant that would require a separate trial of the offense. There was no manifest injustice of miscarriage of justice.

Resp. Ex. E, at 7 (citations omitted).

To the extent that this claim constitutes a federal due process claim, rather than a question of state law rules of joinder and severance, the decision of the Missouri appellate court on this ground was not contrary to or an unreasonable application of federal law. First, joinder of the charges was appropriate in this case. They are similar in character because they involved the same perpetrators, and both involved detaining the victims in some way and robbing them. They also occurred close in time, and Head made statements that pertained to both incidents. Additionally, severance is not warranted because Head has not made a sufficient showing of prejudice. In his motion in the trial court, he made vague assertions that the jury may consider evidence of his guilt on one charge as evidence of guilt on another, and that he may want to testify on one charge but not the other. As explained above, these bald statements are not sufficient absent specific

explanations of how this prejudice may actually result. Therefore, the state court's conclusion that joinder was proper and severance was not warranted is entirely consistent with federal law. Ground 2 is without merit.

3. *Informing Jurors of Other Bad Acts*

In Ground 3, Head claims that the trial court erred by informing the jury that he was being tried for the attempted first degree robbery of Adam Long before the prosecutor nolle prosequied this count. In his direct appeal, he argued that the jury improperly convicted him because of the presentation of this "other crimes" evidence.

The Missouri Court of Appeals reviewed this claim on direct appeal for plain error because Head failed to properly preserve this claim for appellate review by not objecting to the evidence or raising this allegation of error in his motion for a new trial. The first mention of this crime occurred when the trial court addressed the jury panel before voir dire, stating: "The State of Missouri has charged that [Defendant] has committed the offenses of robbing [Harris], attempting to rob [Long], raping J.W., kidnapping J.W., and assaulting J.W." Resp. Ex. A, at 6. Subsequently, the prosecutor made a statement in voir dire about this crime, seeking to determine whether anyone heard about any of these crimes in the media.[1] When Long failed to appear in court and the State decided to nolle

---

[1] Specifically, the prosecutor stated: "Additionally, [defendant's] charged with attempted robbery in the first degree. The complaining witness in that case is Adam Long. That incident

prosequi the charge, defense counsel said it was "fine" for the judge to simply tell the jury that they would no longer be considering the charge of attempted first degree robbery.[2] Head now contends that these references constituted error.

The appellate court analyzed the statements made regarding the robbery of Adam Long and determined that Head failed to "support his claim that he suffered manifest injustice as a result of the State's presenting evidence of 'another crime.'" Resp. Ex. E, at 8. Specifically, the appellate court explained its rationale as follows:

> Unlike in [the cases cited by Head], here, the State never presented any evidence to the jury of another crime. In addition, the trial court specifically explained to the jury that they would not be considering the attempted robbery count and, unlike in [those cases] where defendants objected, Defendant here approved the trial court's statement to the jury.
> Finally, defendant did not suffer manifest injustice where there was overwhelming evidence to establish guilt on the remaining counts including: Harris's and J.W.'s testimony detailing the crimes perpetrated against them; Defendant's admission at trial that he drove the truck that caused Harris to pull over; Defendant's admission that he positioned the truck so that Harris could not leave; Defendant's admission that he grabbed J.W., dragged her into the alley, pulled off her clothes, and finally; the videotape from the convenience store that showed Defendant following J.W. out of the convenience store moments before the crime occurred.

---

occurred on January the 10th of 2006 in the 4300 block of West Pine, also in the Central West End." Resp. Ex. A, at 16-17.

[2]The trial court addressed the jury as follows: "You may remember that yesterday at the very beginning of voir dire I told you what the charges were against the defendant. One of the charges I indicated was that the State had charged that the defendant had attempted to rob Adam Long. This is not going to be submitted to you for your consideration. Erase it from your mind. It's not part of the case." Resp. Ex. A, at 152-53.

Resp. Ex. E, at 9.

The Missouri Court of Appeals properly concluded that no inadmissible evidence was presented to the jury. The statements made by the judge and the prosecutor about the attempted first degree robbery charge were insubstantial and provided no details on which the jury could have improperly based its decision of guilt regarding Head's other charges. Additionally, the prosecutor acted appropriately because when these statements were made, the attempted first degree robbery charge was still part of the case. Head's argument does not even implicate Fed. R. Evid. 404(b), as to whether evidence of other bad acts is admissible, because there was absolutely no evidence presented to the jury about these alleged acts against Adam Long, other than the existence of a mere accusation against Head for that crime.

Additionally, to the limited extent that the jury was informed about Head's conduct involving Adam Long, the judge's instruction to the jury that this charge would no longer be a part of the case cured any possible error. *See Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (explaining that courts "generally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it" absent unusual circumstances). Furthermore, defense counsel consented to the judge's instruction at the time of trial. Because this argument

does not implicate any federal law to which the appellate court's decision may have been contrary, Ground 3 is dismissed.

## V. Certificate of Appealability

Under 28 U.S.C. § 2253, an appeal may not be taken to the court of appeals from the final order in a 28 U.S.C. § 2254 proceeding unless a circuit justice or judge issues a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right. *Id.* § 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). I find that reasonable jurists could not differ on any of Head's claims, so I will deny a Certificate of Appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Eddie Head for writ of habeas corpus [#1] pursuant to 28 U.S.C. § 2254 is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a Certificate of Appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of February, 2012.